ROBERT COLEMAN,     )
           )
  Plaintiff,     )
           )  **Case No. 2:09-0036**
v.          )  **Judge Nixon**
           )  **Magistrate Judge Brown**
MICHAEL ASTRUE,    )
Commissioner of Social Security,  )
           )
  Defendant.     )

## ORDER

Pending before the Court is Plaintiff Robert Coleman's ("Plaintiff") Motion for Judgment

on the Administrative Record ("Plaintiff's Motion") (Doc. No. 15) with supporting

Memorandum (Doc. No. 16). Defendant filed a Response in Opposition. (Doc. No. 24.)

Magistrate Judge Brown issued a Report and Recommendation ("Report") (Doc. No. 25) that

Plaintiff's Motion be denied and that the decision of the Social Security Administration ("SSA")

be affirmed. Plaintiff has filed Objections to the Report (Doc. No. 32) and Supplemental

Authority in Support of Objections (Doc. No. 33). Upon review of the Magistrate Judge's

Report and for the reasons discussed herein, the Court **GRANTS** Plaintiff's Motion in part and

**DENIES** Plaintiff's Motion in part. The Court **REMANDS** the case for further administrative

proceedings.

## I. BACKGROUND

### A.  Procedural Background

Plaintiff filed an application for Social Security Income ("SSI") and Disability Insurance

Benefits ("DIB") on September 15, 2004, alleging a disability onset date of September 12, 2003.

(Tr. 84-89, 92.) Plaintiff alleges that he is disabled due to reflex sympathetic dystrophy ("RSD") and related conditions. (Tr. 98.) Plaintiff's application was denied initially and also upon reconsideration. (Tr. 69-81.) Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") on October 26, 2005. (Tr. 64-65.) The hearing was conducted before ALJ Joan Lawrence on October 4, 2007. (Tr. 572-80.) The ALJ denied Plaintiff's claim on November 28, 2007. (Tr. 30-43.) Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since September 12, 2003, the alleged onset date (20 C.F.R. 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: complaints of RSD (reflex sympathetic dystrophy), status-post left knee arthroscopy due to meniscal tear, status-post left tibial stress fracture, chronic obstructive pulmonary disease, minimal cervical degenerative disc disease with disc bulging and stenosis, depression, and anxiety (20 C.F.R. 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except that he cannot perform any climbing of ladders, ropes, or scaffolds or more than occasional climbing of ramps and stairs, balancing, crouching, crawling, or kneeling. He is also precluded from work exposing him to dust, fumes, smoke, chemicals, or noxious gases. The claimant has a limited, but satisfactory, ability to deal with people, relate to co-workers, deal with the public; deal with work stresses; maintain attention and concentration; respond appropriately to changes in the work setting; and complete a normal workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable length and amount of rest periods.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

7. The claimant was born on December 14, 1967, and was 35 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 12, 2003 through the date of this decision (20 C.F.R. 404.1520(g)).

(Tr. 33-43.)

On December 3, 2007, Plaintiff sought review of the ALJ's decision from the Appeals Council. (Tr. 27-29.) On February 2, 2009, the Appeals Council adopted the ALJ's decision, rendering that decision the final decision of the Commissioner. (Tr. 8-10.)

On April 15, 2009, Plaintiff filed this action to obtain judicial review of the ALJ's final decision (Doc. No. 1) pursuant to 42 U.S.C. § 405(g). On April 20, 2010, Magistrate Judge Brown recommended the ALJ's decision be affirmed and Plaintiff's Motion be denied. (Doc. No. 25.) Plaintiff asserts five (5) objections to the Magistrate Judge's findings. (Doc. No. 32.) Specifically, Plaintiff's objections are as follows:

1. Plaintiff objects to the finding that the ALJ's improper reliance on the testimony of the vocational expert is ("VE") harmless error.

2. Plaintiff objects to the finding that the ALJ was justified in rejecting each and every residual functional capacity ("RFC") assessment of a treating or consulting physician or psychologist who actually examined him in favor of the opinions of non-examining state agency consultants.

3. Plaintiff objects to the finding that the ALJ did not violate 20 C.F.R. § 404.1520 by failing to assign "significant limitations" to the mental impairments, depression, and anxiety, which she herself found to be "severe."

4. Plaintiff objects to the finding that the ALJ did not fail to properly evaluate the credibility of Plaintiff's statements regarding his pain and symptoms pursuant to 20 C.F.R. §§ 404.1529 and 416.9329, S.S.R. 96-7p, 1996 WL 374186 (July 2, 1996), and Sixth Circuit precedent.

5. Plaintiff objects to the Report's finding that the "misconstruing" of the evidence by the ALJ is only harmless error.

(Doc. No 32.)  The Court discusses the merits of Plaintiff's objections below.

### B. Factual Background

The Court adopts the facts as stated in the Review of the Record in Magistrate Judge Brown's Report.  (Doc. No. 25, at 3-11.)

## II.     STANDARD OF REVIEW

The Court's review of the Report is *de novo*.  28 U.S.C. § 636(b) (2010).  However, review is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors."  *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).  Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g) (2010).  Accordingly, the reviewing court will uphold the ALJ's decision if it is supported by substantial evidence.  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  Substantial evidence is a term of art and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consolidation Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "more than a mere scintilla of evidence, but less than a preponderance."  *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison*, 305 U.S. at 229).

A finding of substantial evidence holds significant weight on appeal. "Where substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than that of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

III.  PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

A.  **Plaintiff objects to the Magistrate's finding that the ALJ's improper reliance on the testimony of the vocational expert is harmless error.**

Once a claimant establishes an inability to perform past relevant work, the burden shifts to the Secretary to prove that the claimant is capable of performing a significant number of other jobs within the claimant's residual functional capacity and consistent with the claimant's age, education, and work experience. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). In order to help make this determination, S.S.R. 00-4p, 2000 WL 1898704 (Dec. 4, 2000), allows the ALJ to rely on a VE or a vocational specialist ("VS") in order to resolve complex vocational issues. S.S.R. 00-4p provides that, when the ALJ relies on VE or VS testimony,

> [o]ccupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the

adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such inconsistency.

Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

During the administrative hearing, VE Dr. Julian Nadolsky testified about the availability of jobs Plaintiff could perform based on his physical and mental limitations. (Tr. 572-80.) The ALJ posed several hypotheticals to the VE in order to determine what jobs would be available to Plaintiff. (Tr. 574.) Based on the hypothetical that the ALJ adopted to reflect Plaintiff's residual functional capacity, the VE concluded that Plaintiff could perform jobs that are light and unskilled and identified ten such occupations: flower delivery, pizza delivery, parking lot attendant, night watchman, gate tender, unarmed security guard, bearing ring assembler, gasket inspector, shoe packer, and assembler of electrical accessories. (Tr. 574.) The VE attested to the existence of 2,500 of these jobs locally and 2.75 million nationwide. *Id.*

Plaintiff argues that the ALJ violated S.S.R. 00-4p because the ALJ failed to inquire whether the VE's testimony was consistent with the DOT, and the VE did not state that his testimony was consistent with the DOT or provide DOT numbers or Census Codes for the identified occupations. (Doc. No. 32, at 1.) Plaintiff further maintains that at least five of the ten occupations identified by the VE conflict with the DOT descriptions of those occupations. (*Id.* at 24.)

Magistrate Judge Brown recommended that the Court find that the ALJ violated S.S.R. 00-4p, but that this violation is harmless error. (Doc. No. 25, at 20.) The Magistrate Judge agreed with Plaintiff that the VE's testimony conflicted with the DOT descriptions regarding five

of the ten occupations that the VE stated Plaintiff could perform. (*Id.*) However, the Magistrate

Judge concluded that even after eliminating those five occupations, "the ALJ could still have

found that there were ample jobs for Plaintiff based on the five jobs Plaintiff did not object to."

(*Id.*) (citing *Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 374-75 (6th Cir. 2006); *Troxal

v. Comm'r of Soc. Sec.*, 113 Fed. App'x 80, 83 (6th Cir. 2004)).

> 1. *The ALJ's determination that Plaintiff could perform jobs that exist in significant numbers in the national economy is not supported by substantial evidence and constitutes reversible error.*

The ALJ relied exclusively on the VE's testimony in determining that Plaintiff could

perform jobs that exist in significant numbers in the national economy. Specifically, the ALJ

stated:

> The vocational expert testified that . . . the individual would be able to perform the requirements of representative occupations such as deliverer, parking lot attendant, night watchman, gate tender gasket inspector, and shoe packer. The vocational expert testified that these jobs existed in aggregate numbers of 2,500 in the local economy . . . and 2,750,000 in the national economy . . . .
>
> Based on the testimony of the vocational expert, the undersigned concludes that . . . the claimant has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

(Tr. 43.)

The sole evidence that the ALJ cites in support of this finding is that the VE testified that

the aggregate number of the ten jobs that he believed Plaintiff could perform was 2,500 in the

local economy and 2,750,000 nationwide. (Tr. 43.) Plaintiff asserts that there are

inconsistencies between the VE's testimony and the DOT for at least five of the ten job titles that

the VE opined Plaintiff could perform, and that the actual number of jobs available once the

conflicting jobs are eliminated is unknown. Magistrate Judge Brown agreed that "the VE's

testimony contradicted the DOT descriptions with regard to five of the jobs identified by the VE"

(Doc. No. 25, at 20), but nonetheless found that the ALJ could have found that ample jobs existed among the five to which Plaintiff did not object. This Court rejects this final finding.

Magistrate Judge Brown found that the VE's testimony contradicted with the DOT for five of the ten jobs the VE testified Plaintiff could perform. (Doc. No 25, at 20.) On review of the record, the Court agrees. Plaintiff correctly argues that three of the jobs the VE identified— flower deliverer, pizza deliverer, and gate tender—require "medium" exertion in the DOT, *see* DOT 299.477-010, 690.686-042, not "light" as they were classified by the VE. (Doc. No. 32, at 1-2.) Additionally, two of the jobs—unarmed security guard and night watchman—are classified as "semi-skilled," *see* DOT 372.667-034, 372.667-038, rather than "unskilled" as the VE classified them. (*Id.* at 2.) The Court is not convinced that a conflict necessarily exists between the final job about which Plaintiff raised objections—"assembler of electrical accessories"—as there are two versions of this occupation, one of which is semi-skilled ("Assembler, Electrical Accessories II," DOT 729.384-010), the other of which is unskilled ("Assembler, Electrical Accessories I," 729.687-010) and thus appropriate for Mr. Coleman. However, the fact remains that conflicts exist as to at least the five occupations mentioned above.

Here, the sole evidence that the ALJ relied on in concluding that there were a significant number of jobs in the national economy that Plaintiff could perform was the VE's testimony about the aggregate number of the ten jobs the VE believed Plaintiff could still perform. Given the contradiction between five of those jobs and their descriptions in the DOT, that aggregate number is no longer reliable. The Court finds *Cook v. Astrue*, No. 3:06-CV-1881-L, 2009 WL 129583 (N.D. Tex. Jan. 16, 2009), instructive on this point. In *Cook*, the Court remanded the case back to the ALJ after determining that three of four jobs that the VE relied on conflicted with the description of those jobs in the DOT. 2009 WL 129583 at *4. The Court held that it

"can only rely upon the testimony that Cook could perform the job of Film Inspector. The testimony, however, *does not state how many Film Inspector jobs are available, and therefore the court cannot determine if there are a 'significant' number of jobs that [the plaintiff] can perform*." *Id.* (emphasis added). Because of this, the court sustained the plaintiff's objection and found the ALJ's assessment that the plaintiff could perform other work in the economy was not supported by substantial evidence. *Id.* Much like in *Cook*, the Court here is unsure of how many jobs exist in the local economy once the disputed jobs are eliminated, and is hard-pressed to find that substantial evidence supported the ALJ's determination.

The cases cited by the Magistrate Judge do not conflict with this assessment. In *Troxal v. Comm'r Soc. Sec. Admin.*, 113 Fed.App'x. 80, 83 (6th Cir. 2004), the Sixth Circuit found that substantial evidence exited to uphold the ALJ's decision because "the VE identified over 700,000 light jobs that were available to Troxal in the national economy, even if all of the disputed jobs were eliminated." In the other case the Magistrate Judge cites, *Martin v. Comm'r Soc. Sec.*, 170 Fed.App'x. 369, 374-75 (6th Cir. 2006), it also appears that there was an actual figure for the number of non-disputed jobs available to the plaintiff once disputed jobs were eliminated. Here, however, there is no way of knowing how many jobs might be available to Plaintiff if the disputed jobs are eliminated, because the VE only provided an aggregate figure that included all ten of the positions suggested. Without a figure for the number of jobs Plaintiff can perform, the Court must reach the same conclusion as in *Cook* that substantial evidence did not support the ALJ's conclusion that a significant number of jobs exist in the national economy that Plaintiff can perform.

       2.   *The ALJ's failure to inquire about inconsistencies between the VE's testimony and the DOT is reversible error.*

As the Magistrate Judge stated in his report, an ALJ who relies on a VE in making a disability determination has a duty to ask whether the VE's testimony is consistent with the DOT. *See* S.S.R. 00-4p. Recently, a court in this district noted: "The Circuits are split on whether remand is required for a failure to inquire about potential conflicts even when there is no indication that any conflict existed." *Wix v. Astrue*, 2010 WL 520565, at *7 (M.D. Tenn. 2010). This Court has explained, however, that "when an ALJ fails to inquire about the only evidence relied upon in step five of the analysis, or the failure to inquire is coupled with an identifiable inconsistency between the VE's testimony and the DOT, a district court in this circuit, and other circuit courts, have reversed and remanded." *McEwen v. Astrue*, 2009 WL 5196061 (M.D. Tenn. Dec. 21, 2009). Although in *McEwen* we found no reversible error for the ALJ's failure to inquire about inconsistencies because the VE's testimony about other occupations was consistent and adequate, here, the ALJ's entire conclusion is undermined by the inconsistent testimony. This error is more than merely technical and, rather, undermined the foundation of the ALJ's findings. Thus it is a further basis for finding that reversal and remand is necessary.

**B.** **Plaintiff objects to the Magistrate Judge's finding that the ALJ was justified in rejecting the RFC assessments of certain physicians and psychologists in favor of the opinions of non-examining state agency consultants.**

Plaintiff objects to the Magistrate Judge's recommendation to uphold the weight the ALJ accorded certain medical evidence. (Doc. No. 32, at 5-10.) In particular, he objects to (1) the ALJ's decision to place no weight on the assessments of treating physician Dr. Richards and treating Family Nurse Practitioner ("FNP") Joyce; (2) the ALJ's decision to place little weight on the assessments of consulting physician Dr. Surber; (3) the ALJ's decision to place great weight on the opinions of non-examining state agency physicians; (4) the ALJ's decision to place no

weight on the assessment of consulting psychologist Mr. Loftis and great weight on the opinion of non-examining state psychiatrist Dr. Davis.  (*Id.*)

In general, the opinions of a treating physician are entitled to great weight since they are able to provide a "detailed, longitudinal picture" of a claimant's impairments.  20 C.F.R. § 404.1527(d)(2).  Thus, if the assessment of the treating physician is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence in the record, then that assessment should be given controlling weight.  *Id.*  However, when the treating physician's opinion is not sufficiently supported by medical findings, the ALJ may diminish the weight it is given.  *See* 20 C.F.R. § 404.1527(d).  *See, e.g.*, *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir. 2006) (*en banc*); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997).  If the ALJ determines that the treating physician's opinion is not controlling, she must consider the following factors in determining how much weight to assign it: the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the medical evidence supporting the opinion, the opinion's consistency with the record as a whole, and any other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The ALJ must provide "good reasons" for the weight given to such opinions.  S.S.R. 96-2p, 1996 WL 374188 (July 2, 1996); *see also Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).  "Good reasons" are those that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  S.S.R. 96-2p.  Finally, it should be noted that because the definition of disability requires an assessment of both medical and vocational factors, an ALJ is not bound to

accept a treating physician's opinion that a claimant is "disabled."  *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

The opinion of a consulting physician is generally not entitled to the deference due a treating physician.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).  However, more weight is given to the opinion of a specialist about medical issues in his or her area of specialty than to the opinion of a source who is not a specialist.  20 C.F.R. § 404.1527(d)(5).  Furthermore, an ALJ may place greater weight on an assessment made by a non-treating state agency physician if it is consistent with the rest of the medical record.  *King v. Astrue*, No. 6:09-162-JMH, 2010 U.S. Dist. LEXIS 29459, at *11 (E.D. Ky. Mar. 26, 2010); *see also* 20 C.F.R. § 404.1527(d)(4).

> 1.  *The ALJ's decision to place no weight on the assessments of treating physician Dr. Richards and treating FNP Joyce is supported by substantial evidence.*

Plaintiff objects to the Magistrate Judge's finding that the ALJ was justified in rejecting the assessments of Dr. Richards and FNP Joyce in favor of the opinions of non-examining physicians and psychiatrists.  (Doc. No. 32, at 5.)  Plaintiff objects to the findings of the Magistrate Judge and the ALJ that the record lacks objective medical evidence to support Dr. Richards' and FNP Joyce's assessments.  (*Id.* at 6-7.)  Plaintiff contends that the record contains ample objective evidence in support of Dr. Richards' and FNP Joyce's assessments.  (*Id.*)

The ALJ had a sufficient basis for rejecting the assessments of Dr. Richards and FNP Joyce.  First, the ALJ noted that Dr. Richards's and FNP Joyce's assessments contain limitations "so severe as to indicate an individual on near total bed rest and incapable of even basic social contact," inconsistent with objective and clinical evidence regarding Mr. Coleman's condition, his treatment history, and his reported daily activities.  (Tr. 40-41.)  Plaintiff argues that this

conclusion mischaracterized their opinions. (Doc. No. 32, at 11.) However, FNP Joyce wrote

that Plaintiff could only sit for one hour and must lie down for two hours during an eight-hour

work day. (Tr. 420.) Dr. Richards found that Plaintiff could sit, stand or walk for less than one

hour at a time before requiring an alternate position (Tr. 307) and that he could not extend either

of his arms for more than 30 minutes per day (Tr. 308). Dr. Richards also opined that Plaintiff

had marked restrictions in every mental category, activities of daily living, maintaining social

functioning, maintaining concentration, persistence, or pace, and repeated episodes of

decompensation, each of extended duration. (Tr. 308.) Such restrictions are defined in Dr.

Richards' assessment as being so severe as to interfere seriously with an individual's ability to

function independently, appropriately, effectively, and on a sustained basis. (Tr. 308.)

The ALJ found that the severity of Plaintiff's limitations as described by these

assessments was inconsistent with the objective and clinical evidence in the record. Plaintiff's

record contains substantial objective medical evidence that supports the ALJ's determination

regarding Plaintiff's knee. X-rays of Plaintiff's left knee from September 2003 revealed a

"normal knee." (Tr. 221.) In January 2004, Dr. Keith Miller, an orthopedist, concluded that

Plaintiff's "MRI results don't go along with his history of the knee giving out on him in

September and does not go along with where he is hurting which is more medial joint line." (Tr.

240.) Later, in October 2004, treating orthopedic specialist, Dr. Gregory Roberts, reported twice

that Plaintiff's knee was "benign" with "no abnormalities." (Tr. 247-48.) Furthermore,

Plaintiff's medical imaging report from February 2005 demonstrated that Plaintiff's left knee had

no fracture or dislocation, with no significant joint space narrowing. (Tr. 263.) The ALJ also

noted that since 1999, Plaintiff has required only conservative treatment for knee pain. (Tr. 40.)

Dr. Surber's observations of Plaintiff's behavior support this finding. During an exam, Plaintiff

told Dr. Surber that he could not bend his left knee nor put any weight on his left leg. (Tr. 285-86.) However, when unaware that he was being observed and tested, Plaintiff was able to sit with his left knee bent at ninety degrees and could ambulate by putting weight on his left leg. (Tr. 285-86.) Further, Dr. Surber noted that Plaintiff's sensation was intact in all areas of his right and left legs, including both feet. (Tr. 286.) Similarly, the objective medical evidence regarding Plaintiff's neck and back pain conflicts with the assessments of Dr. Richards and FNP Joyce. Cervical X-rays and MRI scans in 2005 and 2007 revealed minimal degenerative changes with no surgically significant disc pathology. (Tr. 438, 464.)

Furthermore, objective medical evidence regarding Plaintiff's chronic obstructive pulmonary disease conflicts with Dr. Richards and FNP Joyce's assessments. Plaintiff's chest X-rays revealed emphysematous changes and air trapping, but no other symptoms. (Tr. 486.) In 2005 treating pulmonary specialist Dr. Douglas Kane reported that Plaintiff's lungs were not as bad as would be expected given complaints and that there was a behavioral component to his breathing problems. (Tr. 378.) Dr. Kane also noted that review of Plaintiff's CT scan revealed no significant intra-parenchymal abnormalities. (Tr. 377.) After alleging symptoms of a stroke in 2006, clinical exams showed no neurological deficits or weakness, and brain MRI and MRA scans, as well as a carotid ultrasound, were normal. (Tr. 438-443, 461.)

Plaintiff has not required treatment from mental health professionals. His sole mental health treatment consisted of occasional prescriptions for anti-depressants from Dr. Richards or FNP Joyce. Psychological consultative examiner, Mr. M. Loftis, found that Plaintiff had a normal mood and affect and normal judgment, insight, concentration, and memory. (Tr. 317-21.)

Finally, the ALJ properly concluded that there was no basis for many of the restrictions in Dr. Richards's and FNP Joyce's notes. *See* 20 C.F.R. § 404.1527(d)(3). Before completing the RFC assessment, neither recorded any comments or notes of Plaintiff experiencing significant affective distress. (Tr. 37, 382-436.) Furthermore, the ALJ pointed out that Plaintiff's record contains no evidence of any extended periods of decompensation. (Tr. 38.) Both Dr. Richards's and FNP Joyce's RFC contained extreme reaching and handling limitations. (Tr. 308-421.) When reviewing Plaintiff's records, Dr. Ryan concluded that these limitations lacked credibility, since neither Dr. Richards's nor FNP Joyce's treatment notes contained any complaints of hand problems. (Tr. 315.) Dr. Richards recorded a total restriction for Plaintiff from driving cars, but Plaintiff in fact self-reported that he could still drive cars. (Tr. 130.) Dr. Richards and FNP Joyce conflicted greatly with each other when Dr. Richards found that Plaintiff could only sit for six hours in a workday, and Joyce found that Plaintiff could sit for only one hour in the workday. (Tr. 307, 420.) No explanation was provided of any changes causing this discrepancy, despite the fact that both assessments were based on the same treatment.

Plaintiff contends that substantial evidence actually supports the assessments of Dr. Richards and FNP Joyce. However, as demonstrated above, the record contained substantial evidence that conflicted with their assessments. Furthermore, "[w]here substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*)).

2. *The ALJ's decision to place little weight on the conclusions of consulting physician Dr. Surber is supported by substantial evidence.*

Plaintiff objects to the ALJ's decision to place little weight on the assessments of consulting physician Dr. Surber. (Doc. No. 32, at 5.) The opinion of a consulting physician is

generally not entitled to the deference due a treating physician. *Barker v. Shalala*, 40 F.3d 789, 794 (1994). In her opinion, the ALJ explained that she placed little weight on the assessment of consulting physician Dr. Surber because it was not supported by medical evidence on record or by Dr. Surber's own clinical findings. (Tr. 37.)

First, there was substantial evidence for the ALJ to find that Dr. Surber's opinion was inconsistent with his own clinical exam findings and with objective evidence. (Tr. 37.) Dr. Surber found that Plaintiff's left knee had slight palpable tenderness with no evidence of effusion or instability. (Tr. 285.) Dr. Surber noted a discrepancy in the muscle mass of Plaintiff's left calf compared to his right, which could be consistent with Plaintiff's diagnosis of RSD. (Tr. 285.) However, Plaintiff's sensation was intact on all areas of right and left legs, including both feet and both knees. (Tr. 286.) Dr. Surber noted that many of Plaintiff's complaints were inconsistent with the results of his examination. (Tr. 284-86.) Plaintiff claimed to not be able to flex his left knee, but later sat with his left knee in a flex position of ninety degrees; Plaintiff refused to do a complete extension of his left knee during a straight-leg test, but later extended it when walking around the room; Plaintiff refused to put weight on his left leg during the one-leg stand procedure, but later was able to walk and put full weight on it. (Tr. 285-86.) Dr. Surber noted that Plaintiff complained of neck and mid and lower back pain, but Dr. Surber found no abnormalities with Plaintiff's neck and back. (Tr. 286-87.)

Following the examination, Dr. Surber concluded that Plaintiff would occasionally be able to lift or carry at least 10-15 pounds during up to one-third or possibly one-half of an eight-hour workday; would be able to stand or walk with normal breaks for up to at least two to four hours in an eight-hour workday, provided he was allowed to sit in between times that standing was required, and would be able to sit up to eight hours in an eight-hour workday. (Tr. 287.) Dr.

Surber did not find any limitations regarding Plaintiff's complaints of neck or mid or lower back pain. (Tr. 286.)

The ALJ noted that Dr. Surber's findings were inconsistent with his own clinical exam findings. (Tr. 37, 41.) Upon review of Dr. Surber's notes, state agency physician Dr. Ryan also concluded that the restrictions recommended by Dr. Surber were too restrictive given the lack of evidence and discrepancy between what Plaintiff reported and what Plaintiff observed. (Tr. 315.) Considering Dr. Ryan's conclusion and Dr. Surber's other findings, this Court finds that substantial evidence supports the ALJ's conclusion that Dr. Surber's assessment was too restrictive and should be afforded little weight.

### 3. The ALJ's decision to place great weight on the opinions of non-examining state agency physicians is supported by substantial evidence.

Plaintiff objects to the Magistrate Judge's recommendation to uphold the ALJ's decision to place great weight on the opinions of non-examining physicians and psychiatrists. (Doc. No. 32, at 5.) Two state agency physicians reviewed Plaintiff's record and completed RFC analyses in August 2004 and April 2005; both found that Plaintiff had no severe physical impairment. (Tr. 37, 216, 289.) Another state agency physician, Dr. Ryan, reviewed Plaintiff's record and performed an RFC analysis on September 27, 2005. (Tr. 310-16.) After Plaintiff obtained these RFCs, but before he appeared at the administrative hearing on October 4, 2007, Plaintiff received further medical treatment. (Doc. No. 32, at 5.) Following the administrative hearing, Plaintiff obtained additional medical records (Tr. 350-486) and received further medical treatment, which he submitted to the Appeals Council (Tr. 487-544, 581-92, 603-08). Since each RFC completed by a state agency physician was performed prior to Plaintiff's last medical treatment, none of them are based on Plaintiff's entire medical record. (Doc. No. 32, at 5-6.) Plaintiff accordingly argues that because these assessments were completed prior to his last medical treatment, they do

not constitute substantial evidence and should not trump the treating sources or the consultant. (*Id.* at 5, 9.)

An ALJ may place great weight on an RFC made by a non-examining state agency physician if it is consistent with the medical record. *See King v. Astrue*, No. 6:09-162-JMH, 2010 U.S. Dist. LEXIS 29459, at *11; 20 C.F.R § 404.1527(d)(4). In this case, the RFCs of the treating physicians conflicted with other objective medical evidence in the record, and thus were afforded no weight. Thus, the RFC of the state agency physician was the only remaining RFC in the record. (Tr. 41.) Dr. Ryan found that Plaintiff was capable of light work with no climbing of ladders, ropes, or scaffolds, and only occasional climbing of ramps and stairs, balancing, crouching, crawling, or kneeling. (Tr. 312.) He also found that Plaintiff was limited from working in areas with concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 313.) Although the ALJ did afford great weight to the RFC of Dr. Ryan, the ALJ did not adopt his exact RFC. Rather, the ALJ added a restriction against pulmonary irritants to accommodate Plaintiff's early emphysema. (Tr. 41.) Furthermore, the ALJ found that Dr. Ryan's conclusion that Plaintiff ought to be limited to less than a full range of light exertion accommodated Plaintiff's subjective complaints and pain limitations.

The ALJ's decision to place great weight on Dr. Ryan's assessment was largely based on its consistency with the record as a whole particularly the treating specialists' opinions and the ALJ's determination regarding Plaintiff's credibility. (Tr. 40-41.) Dr. Ryan's assessment was consistent with much of the objective and clinical evidence discussed in the previous sections (Parts II.B.1 and II.B.2), particularly the opinions of treating specialists Dr. Kane and Dr. Roberts. Further, the ALJ's opinion that Plaintiff was not entirely credible was supported by substantial evidence. Discounting the credibility of a claimant is appropriate where the ALJ

finds contradictions from medical reports, claimant's other testimony, and other evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525 (6th Cir. 1997) (citing 42 U.S.C. § 423 and 20 C.F.R. § 404.1529(a)). An ALJ's finding on the credibility of a claimant is to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing the witness's demeanor and credibility. *Id.* As described in Part II.D, *infra*, the Court finds that there was sufficient evidence in the record to discount Plaintiff's credibility.

> **4.  *The ALJ's decision to place no weight on the assessment of consulting psychologist Mr. Loftis and great weight on the opinion of non-examining state psychiatrist Dr. Davis is supported by substantial evidence.***

Plaintiff objects to the ALJ's decision to place no weight on the assessment of consulting psychologist Mr. Loftis and to rely on mental assessments completed by non-examining DDS consultant George T. Davis, Ph.D (Doc. No. 32, at 9), concluding that Plaintiff's mental abilities are "limited but satisfactory" (Tr. 39). An ALJ may place great weight on an assessment made by a non-treating state agency physician if it is consistent with the rest of the medical record. *King*, 2010 U.S. Dist. LEXIS at *11; *see also* 20 C.F.R. § 404.1527(d)(4). In her opinion, however, the ALJ explained that she gave no weight to the mental functional assessment of Mr. Loftis because it was inconsistent with his own clinical findings, Plaintiff's lack of mental health treatment, and Plaintiff's hearing presentation and reported daily activities. The ALJ points to an opinion by Dr. Davis that Plaintiff was "moderately limited" in some areas of mental functioning and wrote that he had "significant problems with social/adaptation [sic]," in support of her objection. (*See* Tr. 346, 348.) Dr. Davis also noted that "some, but not substantial, difficulty" to adapt to work-like settings and changes. (Tr. 335.) Citing this information, Plaintiff argues that the ALJ did not have substantial evidence to conclude that Plaintiff's mental abilities were "limited but satisfactory." (Doc. No. 32, at 10.)

The Court finds the ALJ's justifications for her discounting of Mr. Loftis's opinion to be supported by substantial evidence. First, the ALJ noted that Mr. Loftis's mental functional assessment conflicts with his own clinical findings. (Tr. 41.) During the exam, Mr. Loftis observed that Plaintiff had a normal mood and affect, with normal judgment, memory, insight and reasoning, with no evidence of psychosis or delusional thinking. (Tr. 319-20.) Yet in the mental functional assessment, Mr. Loftis concluded that Plaintiff had significant inability to deal with interpersonal relationships and work-related stressors. (Tr. 320.) Plaintiff's record does not contain any evidence of past periods of decompensation. Yet Mr. Loftis also opined that Plaintiff would probably decompensate if placed in any situation in which he had to interact with others and deal with changes in the work environment. (Tr. 320.)

Second, Plaintiff's self-reported daily and social activities contradict Mr. Loftis's mental functional assessment. Plaintiff testified that he prepared simple meals, cared for his children, and did laundry. (Tr. 129.) He also reported that he can and still drives a car and shops for groceries. (Tr. 130.) Plaintiff indicated that he attends church every week and spends time talking with others every day. (Tr. 131.) In the same report, he noted that he sits outside when it is cool. (Tr. 127, 131.) Such daily activities do not suggest a totally disabled individual as Mr. Loftis found, but rather an individual of "limited, but satisfactory, ability to deal with people, relate to co-workers, deal with the public; deal with work stresses . . ." (Tr. 39.)

After rejecting the opinion or Mr. Loftis, the opinion of state agency psychologist, Dr. Davis, was the only remaining psychological exam on record. (Tr. 41.) Dr. Davis found that Plaintiff was moderately limited in only a few categories of mental functioning, and not significantly limited in the majority of categories. (Tr. 333-34.) He concluded that Plaintiff could understand and remember simple and detailed tasks; could concentrate and attend to the

same tasks, despite some difficulty; could interact with coworkers, supervisors and the general public despite some difficulty, without substantial limitation; could adapt to work-like settings and changes with some, but not substantial, difficulty. (Tr. 335.) Dr. Davis also found that although Plaintiff has "depressive D/O that moderately limits functioning," he related adequately and was logical and coherent, with normal mood and affect. (Tr. 348.) He opined that Mr. Loftis' opinion regarding Plaintiff's "social/adaptation [sic] is not supported by the record." (*Id.*)

In contrast with Mr. Loftis' assessment, Dr. Davis's conclusions are consistent with Plaintiff's self-reported reported daily activities and with Plaintiff's employment record. Plaintiff was employed as an assembler from June through August 2004, September through October 2004, January through July 2006, and as a forklift operator from January through July in 2007. (Tr. 156.) Plaintiff's employer reported that claimant always performed any task asked of him with a good attitude. (Tr. 160.) Although Plaintiff had some problems with work attendance, his performance and interaction with others while at work was not a problem. (Tr. 41, 160-65.) Since Dr. Davis' opinion was consistent with the record as a whole, the ALJ did not err by incorporating it into the final RFC conclusion.

**C. Plaintiff objects to the Magistrate Judge's finding that the ALJ did not violate 20 C.F.R. § 404.1520 by failing to assign "significant limitations" to the mental impairments.**

In her opinion, the ALJ found that Plaintiff suffered from the severe mental impairments of depression and anxiety. (Tr. 35.) The ALJ also determined that Plaintiff had

> . . . a limited, but satisfactory, ability to deal with people, relate to co-workers, and deal with the public; deal with work stresses; maintain attention and concentration; respond appropriately to changes in the work setting; and complete a normal workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable length and amount of rest periods.

(Tr. 39.)  Plaintiff alleges that the ALJ violated 20 C.F.R. § 404.1520 by failing to assign

"significant limitations" to the mental impairments (Doc. No. 32, at 10) and improperly used the

phrase "limited, but satisfactory" in a hypothetical question posed to the VE (Tr. 574).  Plaintiff

argues that "limited, but satisfactory" is not a "significant" limitation and that the VE's

testimony indicates he did not regard "limited, but satisfactory" as a significant limitation in

discussing possible occupations for Plaintiff.  (Doc. No. 32, at 9-10.)

In *Longworth v. Commissioner of Social Security*, 402 F.3d 591 (6th Cir. 2005), the Sixth

Circuit dealt with a situation similar to the present case.  There, when determining the plaintiff's

RFC, the ALJ placed limitations on the plaintiff's ability to work because of her "limited but

satisfactory ability to deal with work stresses, maintain attention and concentration, understand,

remember and carry out detailed instructions and to demonstrate reliability."  *Id.*  The ALJ

included this limitation in a hypothetical question to the VE.

> Longworth further claims that the administrative law judge's hypothetical question to the
> vocational expert failed to account for her mental limitations.  This assertion is
> unfounded.  The administrative law judge's hypothetical expressly asked the vocational
> expert to consider only jobs where Longworth could perform despite a "limited but
> satisfactory ability to deal with work stresses, maintain attention and concentration,
> understand, remember and carry out detailed instructions and to demonstrate reliability."
> The hypothetical question therefore did account for the moderate limitations described by
> the medical professionals who evaluated Longworth.

*Id*. at 597-98.  Similarly, in the present case, state agency psychologist Dr. Davis found that

Plaintiff was moderately limited in some areas of mental functioning.  (Tr. 37, 41, 333-35.)  As

in *Longworth*, the ALJ accounted for these moderate limitations in the RFC conclusion by

placing limitations on Plaintiff's ability to work based on his "limited but satisfactory" mental

functioning abilities and posed questions to the VE using this language.  The VE's testimony

demonstrates that he found "limited but satisfactory" to have more than a minimal effect on

Plaintiff's ability to do work activities.  Plaintiff's counsel asked the VE, "If the, in the first

hypothetical, the limitation in various areas of mental functioning was described as limited, but satisfactory. If someone has a satisfactory ability in an area of mental functioning, they don't have a limitation, do they?" (Tr. 577.) The VE responded, ". . . they wouldn't be the sharpest tack in the, thumb tack in a box, but they, they might have some limitation, but compared to some other people, but they would be, they'd be able to function quite well." (Tr. 577.) Thus, as the Magistrate Judge concluded, the ALJ could have been clearer in her choice of terminology, but it appears that the VE and ALJ did account for Plaintiff's mental limitations properly.

### D. Plaintiff objects to the Magistrate Judge's finding that the ALJ properly evaluated the credibility of Plaintiff's statements regarding his pain and symptoms.

Plaintiff argues that the ALJ did not accurately or meaningfully discuss the requisite factors in assessing Plaintiff's credibility. (Doc. No. 32, at 11.) In particular, he cites the fact that the ALJ failed to discuss "the type, dosage, effectiveness, and side effects" of Plaintiff's medications. (Doc. No. 32, at 11.) Plaintiff contends that these medications support a finding that Plaintiff is very credible, and that the ALJ's failure to mention them violates 20 C.F.R. §§ 404.1529 and 416.929. (Doc. No. 32, at 11.)

Regarding the adequacy of an ALJ's assessment, S.S.R. 96-7p provides:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

S.S.R. 96-7p (July 2, 1996).

When assessing the credibility of an individual's statements, the ALJ must consider not only objective medical evidence, but also:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions to pain or other symptoms.

S.S.R. 96-7p (July 2, 1996). There is no requirement, however, that the ALJ expressly discuss each listed factor. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

"[A]n ALJ's finding on the claimant's credibility is to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). If the ALJ finds contradictions among medical reports, claimant's testimony, and other evidence such as the claimant's daily activities, she may discount a claimant's credibility. *Id.* However, an ALJ's credibility determination must be supported by substantial evidence. *Id.*

To support her conclusion on Plaintiff's credibility, the ALJ discussed several important factors, including Plaintiff's daily activities, reports from physicians that Plaintiff exaggerated symptoms or was uncooperative during exams, and a lack of consistency between Plaintiff's complaints and his clinical exams and objective testing. The ALJ noted that Plaintiff testified that he regularly prepares simple meals, cares for his children, and does laundry. (Tr. 129.) Plaintiff also drives, shops for groceries, attends church regularly, and spends times time talking

with others every day. (Tr. 130-31.) Plaintiff also was employed intermittently through 2004, 2006, and 2007. (Tr. 41, 156.) His employer reported that Plaintiff had a good attitude and no problems with work performance. (Tr. 41, 160.)

The ALJ discussed the reports of several physicians who examined Plaintiff and noted that his description of symptoms was not consistent with medical findings. In January 2004, orthopedist Dr. Miller stated that Plaintiff's "MRI results don't go along with his history of the knee giving out on him in September and does not go along with where he is hurting which is more medial joint line." (Tr. 240.) Later that year, treating orthopedic surgeon Dr. Roberts found that Plaintiff's knee was "benign" with "no abnormalities." (Tr. 247-48.) Dr. Roberts also commented that he saw no reason for Plaintiff's knee to be hurting as Plaintiff complained, and later reported that he could not explain why Plaintiff had symptoms medially when his MRI changes were lateral. (Tr. 248-49.) Treating pulmonary specialist Dr. Kane reported a lack of effort from Plaintiff during his exam and testing. He also reported that Plaintiff's lungs were not as bad as would be expected given complaints and that Plaintiff clearly had some behavioral component to his breathing problems. (Tr. 378.) Dr. Kane's review of Plaintiff's CT scan revealed no intra-parenchymal abnormalities. (Tr. 377.) Dr. Surber also noted Plaintiff's lack of cooperation during his clinical exam. (Tr. 284-87.) Plaintiff refused to bend his left knee to ninety degrees, straighten it to full extension, or put any weight on the leg. (Tr. 285-86.) However, Dr. Surber recorded that when Plaintiff was unaware that he was being observed, he sat with his left knee bent at ninety degrees and could ambulate by fully extending and putting weight on his left leg. (Tr. 285-86.) Dr. Surber also noted that Plaintiff's sensation was intact in all areas of his right and left legs, including both feet. (Tr. 286.)

Despite the substantial evidence discussed by the ALJ, Plaintiff argues that the type, dosage, effectiveness, and side effects of his medications make him "very credible." (Doc. No. 32, at 11.) However, Plaintiff does not effectively challenge any of the substantial evidence that the ALJ relied on in making his credibility determination. Furthermore, Plaintiff testified during his hearing that the only side effect he experienced from his medications was sleepiness. (Tr. 637.) It is clear that the ALJ complied with S.S.R. 96-7p by supporting her conclusions regarding Plaintiff's credibility with an examination of relevant medical evidence and required factors. Furthermore, based on that examination, the ALJ had substantial evidence to conclude that the Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible.

**E. Plaintiff objects to the Magistrate Judge's finding that the "misconstruing" of the evidence is only harmless error.**

Plaintiff argues that the ALJ misrepresented evidence in the record in two instances. First, Plaintiff objects to the ALJ's characterization of assessments by Dr. Richards and FNP Joyce as describing "limitations so severe as to indicate an individual on near total bed rest and incapable of even basic social contact." (Doc. No. 32, at 11.) As discussed, *supra* Part III.B.1, the record contains substantial evidence to support the ALJ's assessment of these opinions and decision to afford them no weight.

Second, the Court agrees with Plaintiff that the ALJ misconstrued some of Plaintiff's reported daily activities. The ALJ stated that Plaintiff reported that "he fished, camped, and played football with his son" (Tr. 41)—the activities Plaintiff had reported to be his hobbies. However, Plaintiff stated that he was "unable to do any of my hobbies due to unable to breathe & in pain all the time." (Tr. 131.) Furthermore, Plaintiff reported that he could no longer "play with kids, drive a standard shift, work, go outside any time, run, ride a bike" or do yard work or

dishes.  (Tr. 127-34.)  However, there is adequate evidence other than that which the ALJ

misconstrued to support her conclusions, rendering this harmless error.  For example, Plaintiff

reported the continued ability to drive, regular shopping for groceries, weekly church attendance,

and spending time talking with others every day.  (Tr. 130-31.)

**IV.  CONCLUSION**

 The Court does not find merit in four of Plaintiff's objections because there is substantial

evidence in the record to support the ALJ's decision that Plaintiff is not disabled under 42 U.S.C.

§ 423(d)(1)(A), but does find merit in Plaintiff's objection regarding inconsistencies between the

VE's testimony and the DOT.  Therefore, Plaintiff's Motion is **GRANTED in part** and

**DENIED in part**.  The Court **REVERSES and REMANDS** this case as to the availability of

jobs in the economy for Plaintiff, and **ADOPTS** Magistrate Judge Brown's Report in all other

respects.

 It is so ORDERED.

 Entered this the ____18th_____day of October, 2010.


  JOHN T. NIXON, SENIOR JUDGE
  UNITED STATES DISTRICT COURT